Robert N. ENFIELD and Hanagan Petroleum Corporation, a corporation, Plaintiffs-Appellees,

v.

Thomas S. KLEPPE, Secretary of the Interior, Defendant-Appellant.

No. 76–1737.

United States Court of Appeals, Tenth Circuit.

Argued and Submitted Nov. 14, 1977.

Decided Dec. 16, 1977.

Harold L. Hensley, Jr., Roswell, N.M., of Hinkle, Bondurant, Cox & Eaton, Roswell, N.M., for plaintiffs-appellees.

Maryann Walsh, Atty., Dept. of Justice, Washington, D.C. (Peter R. Taft, Asst. Atty. Gen., Washington, D.C., Victor R. Ortega, U. S. Atty., James B. Grant, Asst. U. S. Atty., Albuquerque, N.M. and Edmund B. Clark, Jacques B. Gelin and Neil T. Proto, Attys., Dept. of Justice, Washington, D.C., on the brief), for defendant-appellant.

Before McWILLIAMS, BREITENSTEIN and DOYLE, Circuit Judges.

WILLIAM E. DOYLE, Circuit Judge.

The issue in this case is whether an amended regulation promulgated by the Secretary of the Interior is invalid as applied to oil and gas leases issued between 1960 and 1975, which dates were prior in time to the promulgation of an amended regulation which the Secretary seeks to apply to the said leases. The complaint herein seeks review pursuant to the Administrative Procedure Act together with a declaratory judgment upholding the applicability of the original regulation. The trial court ruled that the amended regulation was being retroactively applied and was, therefore, invalid as to the plaintiff. The amended regulation was issued in 1975.

We must construe the pertinent statute, 30 U.S.C. § 226(e) (1970), which was amended in 1960, and has remained the same since.[1] In essence, this provides that competitive leases issued pursuant to this section have a primary term of five years, and noncompetitive leases have a primary term of ten years. There is a provision also for

---

1. It provides as follows:

Competitive leases issued under this section shall be for a primary term of five years and noncompetitive leases for a primary term of ten years. Each such lease shall continue so long after its primary term as oil or gas is produced in paying quantities. Any lease issued under this section for land on which, or for which under an approved cooperative or unit plan of development or operation, actual drilling operations were commenced prior to the end of its primary term and are being diligently prosecuted at that time shall be extended for two years and so long thereafter as oil or gas is produced in paying quantities.

one two-year extension. This statute also provides that each such lease shall continue so long after its primary term and extension as oil and gas are produced in paying quantities.

The regulation which was ruled invalid was promulgated in 1975 and is reported in 43 C.F.R. § 3107.2–1(b) (1976).[2] As noted below, the first paragraph of the new regulation deals with leases issued before 1960. It defines "primary term" of such leases. Part (2) defines the "primary term" of all other leases to mean the initial term as set forth in the lease, and for a competitive lease issued under § 226(e), *supra*, "this means five years and for a noncompetitive lease issued under that section this means ten years."

The leases which we have before us are noncompetitive and are governed by subsection (2) of the challenged regulation. The conflict in the case derives from the fact that prior to its amendment in 1975, the pertinent regulation defined "primary term" for all leases in terms of present subsection (1) of the embattled regulation. *See* 35 Fed.Reg. 9687 (1970). At all relevant times, 43 C.F.R. § 3107.2–3 (1976) has allowed extensions as follows:

> Any lease on which actual drilling operations, or for which under an approved cooperative or unit plan of development or operation, actual drilling operations were commenced prior to the end of its primary term and are being diligently prosecuted at that time, shall be extended for 2 years and so long thereafter as oil or gas is produced in paying quantities.

Under the terms of this regulation, the life of a noncompetitive lease was ten years, but an unlimited number of two-year extensions were available if actual drilling operations had begun and were being diligently prosecuted at the time of each extension. Furthermore, any extensions continued after the two years as long as oil and gas were being produced in paying quantities. However, under the challenged regulation (§ 3107.2–1(b)(2)), only a single two-year extension is to be granted on the basis of actual drilling operations. If, of course, oil and gas are produced, an extension is continued so long as it is being produced in paying quantities.

The plaintiff held a number of oil and gas leases under the statutory provision, 30 U.S.C. § 226 (1970), quoted in footnote 1. The first lease was issued on October 1, 1963 for a ten-year period. In 1973, it was extended under § 3107.2–3, *supra.* This extension was for two years. Inasmuch, however, as it was not producing oil and gas in paying quantities at the end of the two-year period, it was terminated on September 30, 1975, as the challenged regulation provided. Undoubtedly, if the regulation in effect prior to the 1975 promulgation had been applicable, an extension would have been available for additional two-year periods.

The trial court recognized that the old regulation was not in accordance with the statute and that the new regulation was. The court nevertheless held that the regulation could not be applied to leases previously issued because of the hardship which it would produce on the lessees who were relying on the regulation and its interpretation at the time of its issuance. The court further held that the United States would not suffer a hardship by reason of so applying the regulation.

## I.

## WHAT IS THE EFFECT OF A CONFLICT BETWEEN THE ACT AND REGULATION?

■ We must conclude that the original version of the regulation was in conflict

---

**2.** It provides:

> Primary term. (1) "Primary term" of leases subject to section 4(d) of the Mineral Leasing Act Revision of 1960 [leases issued before 1960] means all periods in the life of the lease prior to its extension by reason of production of oil and gas in paying quantities.

> (2) "Primary term" of all other leases means the initial term as set forth in the lease. For a competitive lease issued under section 17 of the Mineral Leasing Act, as amended (30 U.S.C. 226(e)), this means five years and for a noncompetitive lease issued under that section this means ten years.

with the relevant statute, 30 U.S.C. § 226(e) (1970), and the definition of "primary term" as it is set forth in that section. The prior regulation may have been consistent with the statute prior to 1960. *See* Pub.L. No. 83–555, ch. 644, 68 Stat. 583 (1954).[3] Nor can there be any doubt that Congress when it amended the statute in 1960 intended to limit noncompetitive leases to a ten-year primary term, with a single two-year extension provided actual drilling is diligently being prosecuted at the end of the primary term, and further extensions only if oil or gas is being produced in paying quantities. *See* S.Rep. No. 1549, 86th Cong., 2d Sess., *reprinted in* 2 [1960] *U.S. Code Cong. & Admin. News*, p. 3319. What is the effect of the conflict between the statute and the original regulation which undertook to construe it? The conflict renders the regulation which is in conflict with it void and unenforceable. *See Ernst & Ernst v. Hochfelder*, 425 U.S. 185, 213–14, 96 S.Ct. 1375, 47 L.Ed.2d 668 (1976); *Manhattan General Equipment Co. v. Commissioner of Internal Revenue*, 297 U.S. 129, 134, 56 S.Ct. 397, 80 L.Ed. 528 (1936).

■ Consistent with the conclusion that such a regulation is ineffective, the courts have held that there is no retroactivity problem. *Manhattan General Equipment, supra*, states that it is like a judicial determination construing and applying a statute to a case before it. *Id.* at 135, 56 S.Ct. 397. *See also Dixon v. United States*, 381 U.S. 68, 74–75, 85 S.Ct. 1301, 14 L.Ed.2d 223 (1965), holding that the Commissioner in a tax case could correct an erroneous interpretation of the Internal Revenue Code and make the correction retroactive.

## II.

### · DOES THE DOCTRINE OF ESTOPPEL APPLY?

■ Nor is it possible to accept the argument that the government is estoped from changing the erroneous regulation. In *Atlantic Richfield Co. v. Hickel*, 432 F.2d 587, 591–92 (10th Cir. 1970), it was argued that estoppel precluded the government from collecting higher royalties on leased land in accordance with the statute. There the Acting Director of the Geological Survey had represented to the plaintiff that the higher rate would not apply to its lands. Plaintiff contended that it had relied on this to its detriment. This court held, however, that the higher rate applied because an administrative determination running contrary to law could not constitute an estoppel against the federal government. *Id.* at 592.

The reason for upholding the statute is somewhat obvious. If the interpretative rule does not accurately express the meaning contained in the statutory provision, it cannot operate. The statute prevails now and has prevailed from the outset. *See* 1 K. Davis, *Administrative Law Treatise* § 5.09, at 347 (1958).

The length of time that the faulty regulation was on the books is of no consequence because an administrative provision contrary to statute must be overturned "no matter how well settled and how long standing." *Wilderness Society v. Morton*, 156 U.S.App.D.C. 121, 865, 479 F.2d 842, 865, *cert. denied*, 411 U.S. 917, 93 S.Ct. 1550, 36 L.Ed.2d 309 (1973); *McDade v. Morton*, 353 F.Supp. 1006, 1012 (D.D.C.1973), *aff'd without opinion*, 161 U.S.App.D.C. 237, 494 F.2d 1156 (1974). The latter case dealt with the same statute that is here present. It was ruled that there was no estoppel applicable to an administrative agency as a result of a former interpretation of a statute which had continued for 46 years; that the administrative agency was not precluded from correcting that which is "clearly erroneous."

## III.

### DOES THE ARGUMENT OF PLAINTIFF THAT HE RELIED ON THE REGULATION HAVE VALIDITY?

■ The argument of plaintiff that it has relied to its detriment on the erroneous

---

**3.** This section continues to apply to pre-1960 leases. *See* Pub.L. No. 86–705, § 8, 74 Stat. 781, 791 (1960).

regulation has no more force than the argument that the Secretary is estopped. Since the defective regulation was never valid, there was no right to rely on it. *See Dixon v. United States*, 381 U.S. 68, 73, 85 S.Ct. 1301, 14 L.Ed.2d 223 (1965); *Atlantic Richfield Co. v. Hickel, supra.*

*Safarik v. Udall*, 113 U.S.App.D.C. 68, 304 F.2d 944, *cert. denied*, 371 U.S. 901, 83 S.Ct. 206, 9 L.Ed.2d 164 (1962), is to be distinguished on its facts. The dispute in that case was between the rights of two classes of private persons. *Id.* at 72, 304 F.2d at 948. A further distinction is the court's holding that the act was susceptible to either of two constructions. *Id.* at 948–49. It could be said then that the first interpretation of the statute in *Safarik* was not void from the beginning. A further distinction is found in the court's holding that it was a proper exercise of the Secretary's discretion to decide not to apply the new ruling retroactively. The question whether the Secretary could properly apply a new ruling retroactively was not before the trial court in this case.

The judgment of the district court must be reversed and the cause must be remanded with directions to the trial court to deny relief to the plaintiff-appellee and to enter judgment for the defendant.