744 F.2d 1411
 1984-1985 O.S.H.D. ( 27,069
 EMERY MINING CORPORATION, Petitioner,
v.
SECRETARY OF LABOR, Mine Safety and Health Administration
("MSHA") and Federal Mine Safety and Health Review
Commission, Respondents,
and
United Mine Workers of America, Intervenor.
 No. 83-2046.
 United States Court of Appeals,
Tenth Circuit.
 Sept. 26, 1984.
 
 Timothy M. Biddle, Thomas C. Means, and Adrienne J. Davis of Crowell & Moring, Washington, D.C., for petitioner.
 Francis X. Lilly, Deputy Sol. of Labor, Cynthia L. Attwood, Associate Sol., Michael A. McCord, Counsel, Appellate Litigation, Washington, D.C., Linda L. Leasure, Atty., U.S. Dept. of Labor, Mine Safety and Health Dept., Arlington, Va., for Secretary of Labor.
 Michael H. Holland, Mary Lucille Jordan, and Dennis D. Clark, Washington, D.C., for intervenor.
 Before SETH, BREITENSTEIN and SEYMOUR, Circuit Judges.
 SEYMOUR, Circuit Judge.
 
 
 1
 After examining the briefs and the appellate record, this three-judge panel has determined unanimously that oral argument would not be of material assistance in the determination of this appeal. See Fed.R.App.P. 34(a); Tenth Cir.R. 10(e). The cause is therefore ordered submitted without oral argument.
 
 
 2
 Emery Mining Corporation petitions this court for review of an order by the Federal Mine Safety and Health Review Commission. The Commission found that Emery violated the miner training requirements of the Federal Mine Safety and Health Act of 1977, 30 U.S.C. Sec. 801 et seq. (1982) (the Act), and its implementing regulations by failing to provide refresher training to five miners within twelve months of their last received training. See 30 U.S.C. Sec. 825(a)(3); 30 C.F.R. Sec. 48.8(a) (1982). Emery contends the Commission's decision rests on an erroneous interpretation of the relevant statutes and regulatory provisions. Emery further contends that by its approval of Emery's training plan, the Secretary of Labor is estopped from asserting a violation of the Act. We disagree and affirm.
 
 
 3
 Section 115 of the Act, 30 U.S.C. Sec. 825, provides that each operator of a coal or other mine must have a health and safety training program that is approved by the Secretary of Labor. The statute specifies that each approved program must provide as a minimum that "all miners shall receive no less than eight hours of refresher training no less frequently than once each 12 months...." Id. Sec. 825(a)(3). The regulation in turn requires that "[e]ach miner shall receive a minimum of 8 hours of annual refresher training as prescribed in this section." 30 C.F.R. Sec. 48.8(a).
 
 
 4
 In September 1981, a Mine Safety and Health Administration (MSHA) inspector issued Emery a withdrawal order under section 104(g)(1) of the Act, 30 U.S.C. Sec. 814(g)(1).[1] The order charged that five miners at Emery's Deer Creek Mine in Huntington, Utah had not received annual refresher training, as required by the regulation. The five had last received such training in June 1980, some fifteen months prior to the issuance of the order. Emery objected to the order as well as the proposed penalty, and the actions were consolidated for hearing before an administrative law judge. The ALJ vacated the order and dismissed the case, concluding that even though Congress may have intended that refresher training be conducted within twelve months of the previous training, "the regulation published by MSHA is controlling, and only requires refresher training during every calendar year." Rec., vol. I, at 49.
 
 
 5
 On appeal, the Commission rejected the ALJ's conclusion that calendar year retraining would satisfy the requirements of the regulation, holding that "when 'annual' is read, as it must be, in conjunction with the clear statutory mandate for refresher training at twelve-month intervals, ... [the regulation] requires refresher training to be given within twelve months of the last received training." Id. at 143. The Commission reversed the ALJ's decision and remanded the case for determination of an appropriate civil penalty.[2] This appeal followed.
 
 
 6
 The issue before us is whether Emery violated the "annual refresher training" requirement of 30 C.F.R. Sec. 48.8(a) by conducting refresher training on a "calendar year" rather than an "anniversary date" basis. In Emery's view, it is in compliance if it conducts one refresher course in each calendar year, even if the course is conducted early in one year and late in the next year. Emery contends that the regulation plainly permits calendar year retraining, and that MSHA in fact intended and interpreted it to permit retraining in this fashion. Emery further argues that this contention is consistent with the language and intent of the underlying statute.
 
 I.
 
 7
 We reject Emery's first contention that the Commission has erroneously interpreted the statute and the regulation. Although the "annual refresher training" language of the regulation by itself could be read to permit retraining on a calendar year basis, "a regulation must be interpreted so as to harmonize with and further and not to conflict with the objective of the statute it implements." Trustees of Indiana University v. United States, 223 Ct.Cl. 88, 618 F.2d 736, 739 (1980). We do not interpret this regulation in a vacuum. Rather, we must construe it in light of the statute it implements, keeping in mind that "[w]here there is an interpretation of an ambiguous regulation which is reasonable and consistent with the statute, that interpretation is to be preferred." United Telecommunications, Inc. v. Commissioner, 589 F.2d 1383, 1390 (10th Cir.1978), cert. denied, 442 U.S. 917, 99 S.Ct. 2839, 61 L.Ed.2d 284 (1979).
 
 
 8
 In the present case, any ambiguity in the regulation disappears immediately when the statute is consulted. The Act plainly states that "all miners shall receive no less than eight hours of refresher training no less frequently than once each 12 months ...." 30 U.S.C. Sec. 825(a)(3) (emphasis added). The meaning of these words hardly could be more clear. Each miner must receive refresher training every twelve months, that is, within twelve months of the last received training. The language simply admits of no other reasonable interpretation. Notably, Congress did not require that refresher training be provided once a year, or even once during each twelve month period, phrasing which arguably would permit calendar year retraining. Instead, Congress chose the specific words "once each 12 months," language which, as even the ALJ recognized, clearly expresses the Congressional intent "that refresher training be given at least once every twelve months." Rec., vol. I, at 48.
 
 
 9
 Viewed in light of the statute it implements, the term "annual refresher training" in the regulation must be construed as essentially a shorthand reference for this statutory language.[3] Under Emery's calendar year construction of the regulation, a miner could be trained one year in January and retrained the following year in December, resulting in a lapse of as much as twenty-three months. Such an occurrence plainly is at odds with the language and objective of the statute, even if arguably consistent with the language of the regulation. Accordingly, Emery's construction of section 48.8(a) must be rejected. We "will not interpret an agency regulation to thwart a statutory mandate." Insurance Co. of North America v. Gee, 702 F.2d 411, 414 (2d Cir.1983).[4]
 
 II.
 
 10
 Emery next contends that MSHA officials knowingly approved and for two years acquiesced in Emery's calendar year retraining plan. Such approval, Emery asserts, amounts to a "contemporaneous construction" of the regulation and thus constitutes persuasive evidence of the meaning of the regulatory language. It is settled that an agency's interpretation of its enabling statute and its own regulations is entitled to deference, particularly "when the administrative practice at stake 'involves a contemporaneous construction of a statute [or regulation] by the men charged with the responsibility of setting its machinery in motion, of making the parts work efficiently and smoothly while they are yet untried and new.' " Udall v. Tallman, 380 U.S. 1, 16, 85 S.Ct. 792, 801, 13 L.Ed.2d 616 (1965) (quoting Power Reactor Development Co. v. International Union of Electrical, Radio & Machine Workers, 367 U.S. 396, 408, 81 S.Ct. 1529, 1535, 6 L.Ed.2d 924 (1961) (quoting Norwegian Nitrogen Products Co. v. United States, 288 U.S. 294, 315, 53 S.Ct. 350, 358, 77 L.Ed. 796 (1933))). In the present case, it is conceivable that the mere approval of Emery's training plan by MSHA officials could be viewed as a "contemporaneous construction" by the agency of the pertinent regulations. Cf. Standard Oil Co. v. Department of Energy, 596 F.2d 1029, 1056 (Temp.Emer.Ct.App.1978); Exxon Corp. v. Department of Energy, 91 F.R.D. 26, 41-42 (N.D.Tex.1981); Tenneco Oil Co. v. Department of Energy, 475 F.Supp. 299, 318 (D.Del.1979). But cf. American Motorcyclist Association v. Watt, 534 F.Supp. 923, 934 (C.D.Cal.1981), aff'd 714 F.2d 962 (9th Cir.1983).
 
 
 11
 On this record, however, we cannot conclude that in approving Emery's plan, MSHA construed 30 C.F.R. Sec. 48.8(a) to permit calendar year retraining. In support of its argument, Emery relies in particular on the words "By December 31st Annually," which Emery inserted in its training plan in response to the question "Predicted time when regularly scheduled refresher training will be given." Rec., vol. I, at 254. Emery's witnesses testified at the hearing that in choosing the words "By December 31st Annually," they sought and received approval from MSHA to conduct retraining on a calendar year basis. The MSHA officials who approved Emery's plan did not appear at the hearing, however, and the record contains no direct evidence as to their understanding of this provision. Indeed, the chief concern of MSHA officials during their meetings with Emery appears to have been that MSHA be notified of the dates when refresher training would occur so that its representatives could monitor the sessions. The issue of how much time permissibly could elapse between retrainings was never specifically discussed. We thus are inclined to agree with the Commission that "[s]ubstantial evidence does not support the conclusion that MSHA knowingly agreed to a retraining plan on a calendar-year basis."[5] Id. at 143.
 
 
 12
 Even assuming arguendo that MSHA did intend to allow calendar year retraining, this evidence of the regulation's meaning "is only one input in the interpretational equation," Zuber v. Allen, 396 U.S. 168, 192, 90 S.Ct. 314, 327, 24 L.Ed.2d 345 (1969), and it must be balanced against the overwhelming evidence of contrary Congressional intent described above. The rule of deference does not require that we accept an administrative interpretation of a regulation that is "plainly erroneous," especially where a "statutory limitation" is involved. Tallman, 380 U.S. at 16-17, 85 S.Ct. at 801; see Shepherd v. Merit Systems Protection Bd., 652 F.2d 1040 at 1043; American Motorcyclist Association, 534 F.Supp. at 934. As this court has stated before, we accord little weight "to an agency's interpretation of a regulation, when, as here, an agency's interpretation is inconsistent with the controlling statute." Edwards v. Califano, 619 F.2d 865, 869 (10th Cir.1980); see also Oglala v. Andrus, 603 F.2d 707 at 718 ("A court need not accept an agency's interpretation of its own regulations if that interpretation is inconsistent with the statute under which the regulations were promulgated...."); Vialpando v. Shea, 475 F.2d 731, 735 (10th Cir.1973), aff'd 416 U.S. 251, 94 S.Ct. 1746, 40 L.Ed.2d 120 (1974). Even if MSHA did construe the regulation in the manner now advanced by Emery, that construction must give way to an interpretation of the regulation that does not conflict with the statute it purports to implement. Cf. Enfield v. Kleppe, 566 F.2d 1139, 1141-42 (10th Cir.1977).
 
 III.
 
 13
 For similar reasons, Emery's estoppel argument also must fail. As this court has observed, "courts invoke the doctrine of estoppel against the government with great reluctance." United States v. Browning, 630 F.2d 694, 702 (10th Cir.1980), cert. denied, 451 U.S. 988, 101 S.Ct. 2324, 68 L.Ed.2d 846 (1981); see Heckler v. Community Health Services, --- U.S. ----, 104 S.Ct. 2218, 2224, 81 L.Ed.2d 42 (1984) (government may not be estopped on same terms as any other litigant). Application of the doctrine is justified only where "it does not interfere with underlying government policies or unduly undermine the correct enforcement of a particular law or regulation." Browning, 630 F.2d at 702. Equitable estoppel "may not be used to contradict a clear Congressional mandate," Worley v. Harris, 666 F.2d 417, 422 (9th Cir.1982), as undoubtedly would be the case were we to apply it here. See Enfield, 566 F.2d at 1142; cf. Molton, Allen & Williams, Inc. v. Harris, 613 F.2d 1176, 1178-79 (D.C.Cir.1980).
 
 
 14
 Although the record reflects some confusion surrounding MSHA's approval of Emery's training plan, as a general rule "those who deal with the Government are expected to know the law and may not rely on the conduct of government agents contrary to law." Community Health Services, 104 S.Ct. at 2226. Whatever their position within the agency, the MSHA officials who approved Emery's plan clearly had no authority to waive the Act's requirements and bind the government to what amounts to an amendment of the statutory language. Particularly where mandatory safety standards are concerned, a mine operator must be charged with knowledge of the Act's provisions and has a duty to comply with those provisions. To the extent Emery relied on an interpretation by MSHA officials of the Act's implementing regulations, Emery assumed the risk that that interpretation was in error. See Browning, 630 F.2d at 702; see also Community Health Services, 104 S.Ct. at 2226 n. 17.
 
 
 15
 Furthermore, it is far from clear that the requirements for equitable estoppel have been met in this case. In order to assert estoppel, a party "must have relied on its adversary's conduct 'in such a manner as to change his position for the worse,' and that reliance must have been reasonable in that the party claiming the estoppel did not know nor should it have known that its adversary's conduct was misleading." Id. at 2223 (quoting III J. Pomeroy, Equity Jurisprudence Sec. 805, at 192 (S. Symons ed. 1941)). In addition, the true facts of the matter must have been unknown to the party claiming the estoppel not only at the time of the representation, "but also at the time when [that representation] is acted upon by him. If, at the time when he acted, such party had knowledge of the truth, ... he cannot claim to have been misled by relying upon the representation or concealment." Id. at 2223-24 n. 10 (quoting Pomeroy, supra, Sec. 810, at 219).
 
 
 16
 In the present case, MSHA issued a policy memorandum on June 1, 1981, which indicated that miners would have to receive annual refresher training by the end of "the last calendar month of their annual training cycle. For example, a miner beginning work on June 5, 1981, may complete his annual refresher training anytime before June 30, 1982." Rec., vol. I, at 248. The record reveals that Emery became aware of the information in this memorandum sometime in June 1981, the month in which the miners in this case should have been retrained under the MSHA policy, and some three months before the withdrawal order against Emery was issued.[6] Had Emery acted upon this knowledge in reasonably prompt fashion it could have brought itself into compliance with the regulation and thereby avoided receiving any citation from MSHA. Even if Emery initially conducted calendar year retraining in reliance on MSHA's approval of its training plan, such reliance no longer was reasonable after June 1981. Accordingly, Emery's invocation of the estoppel doctrine is unavailing.[7]
 
 
 17
 We have reviewed Emery's remaining contentions and find them to be without merit. The Commission's order is affirmed.
 
 
 
 [1]
 Section 104(g)(1) provides that:
 "If, upon any inspection or investigation ..., the Secretary or an authorized representative shall find employed at a coal or other mine a miner who has not received the requisite safety training as determined under section 825 of this title, the Secretary or an authorized representative shall issue an order under this section which declares such miner to be a hazard to himself and to others, and requiring that such miner be immediately withdrawn from the coal or other mine, and be prohibited from entering such mine until ... such miner has received the training required by section 825 of this title."
 30 U.S.C. Sec. 814(g)(1) (1982).
 
 
 [2]
 On remand, the ALJ assessed a penalty of $100 against Emery. See 30 U.S.C. Sec. 820(a) (authorizing civil penalty for violation of mandatory health or safety standards)
 
 
 [3]
 Indeed, the legislative history of the Act demonstrates that Congress itself freely substituted the word "annual" for the statutory language in describing the Act's provisions. See, e.g. S.Rep. No. 181, 95th Cong., 1st Sess. 77, reprinted in 1977 U.S.Code Cong. & Ad.News 3401, 3476; H.R.Conf.Rep. No. 655, 95th Cong., 1st Sess. 61, reprinted in 1977 U.S.Code Cong. & Ad.News 3485, 3509
 
 
 [4]
 Relying on United States v. Larionoff, 431 U.S. 864, 97 S.Ct. 2150, 53 L.Ed.2d 48 (1977), Emery argues that if the Act does in fact prohibit calendar year retraining, we should invalidate 30 C.F.R. Sec. 48.8(a) as being inconsistent with the statutory terms. Larionoff is clearly distinguishable from the case at bar. The Court in that case found no serious dispute as to the meaning of the relevant regulations, which had been subject to a long-standing administrative interpretation. Because those regulations, as construed, "were contrary to the manifest purposes of Congress," the Court had little choice but to declare them invalid. Id. at 873, 97 S.Ct. at 2156. Here, by contrast, no useful purpose is served by invalidating the regulation since it has been subject to no clear or long-settled interpretation at odds with legislative intent and reasonably can be construed in a manner consistent with the underlying statute. Emery's reliance on Larionoff is therefore misplaced
 
 
 [5]
 Emery asserts that it conducted "calendar year" refresher training for two years without objection from MSHA. This fact is not indicative of MSHA's knowledge because the record contains no evidence that Emery miners failed to receive retraining within twelve months of their previous training at any time prior to the issuance of the withdrawal order in this case
 
 
 [6]
 Emery's assistant director of training, Ray Guymon, testified as follows:
 "Q Now, the citation wasn't issued until September of 1981. You've also testified that you became aware of the information in that document prior to the time you actually saw that document. I want you, if you can, to tell me a place and time when you first recall becoming aware of the information contained in that exhibit.
 A Probably June or July. That's the best I can do.
 Q Of 1981?
 A Yes.
 Q Do you know whether it was before or after the five people listed in the citation should have been trained?
 ....
 THE COURT: Should have been trained according to the Government's position?
 MR. BARKLEY: According to the Government's position.
 THE WITNESS: It was prior to that.
 Q (By Mr. Barkley) So you were aware of the information in that document prior to the time the Government said those people should have been trained?
 A That's correct."
 Rec., vol. I, at 221-22.
 
 
 [7]
 Moreover, cases in this circuit have suggested that "a showing of 'affirmative misconduct' is necessary to estop the government." Lurch v. United States, 719 F.2d 333, 341 & n. 12 (10th Cir.1983), cert. denied, --- U.S. ----, 104 S.Ct. 1710, 80 L.Ed.2d 182 (1984). See Home Sav. & Loan Ass'n v. Nimmo, 695 F.2d 1251, 1261 (10th Cir.1982) (McKay, J. dissenting); see also INS v. Miranda, 459 U.S. 14, 17, 103 S.Ct. 281, 282, 74 L.Ed.2d 12 (1982); Schweiker v. Hansen, 450 U.S. 785, 788, 101 S.Ct. 1468, 1470, 67 L.Ed.2d 685 (1981); Sweeten v. Department of Agriculture Forest Service, 684 F.2d 679, 682 (10th Cir.1982). Emery failed to prove that any such misconduct occurred