**UNITED STATES of America, Plaintiff,**

v.

**INTERCON LEASING, INC., a Florida corporation, Jerry L. Harvey, individually and as President of Intercon Leasing, Inc., Angel Dela Cuesta-Guzman, John Doe, Second in Command, Defendants in personam,**

**and**

**Douglas DC–6A Aircraft, Registration Number N45501, Manufacturer's Serial Number 45551, Defendant in rem.**

**No. 79–2605 CIV–NESBITT.**

United States District Court,
S.D. Florida, S.D.

June 28, 1985.

Judy K. Hunt, Asst. U.S. Atty., Miami, Fla., for plaintiff.

James McMaster, Richard Bernstein, Miami, Fla., for defendants.

## FINDINGS OF FACT AND CONCLUSIONS OF LAW

NESBITT, District Judge.

THIS CAUSE was filed on June 14, 1979 and was subsequently assigned to the undersigned successor Judge. The cause was tried to the Court upon a complaint by the UNITED STATES OF AMERICA (United States) to recover civil penalties from the Defendants INTERCON LEASING, INC. (Intercon) and JERRY L. HARVEY (Harvey) under the Federal Aviation Act of 1958, § 903, as amended, 49 U.S.C. § 1473 (the Act), to recover civil penalties under § 901 of the Act (49 U.S.C. § 1471) and for injunctive relief as provided in § 1007 of the Act (49 U.S.C. § 1487) and for other violations of the Act as now set forth in 49 U.S.C. §§ 1430(a)(1, 2, 4, 5), 1485(c). The complaint was filed against two other Defendants who are not before the Court. Upon the evidence presented, the Court does hereby enter its findings of fact and conclusions of law as follows:

### FINDINGS OF FACT

The Court has jurisdiction of the cause and of the parties. Jurisdiction is specifically conferred upon this Court by §§ 903 and 1007 of the Act (49 U.S.C. §§ 1473, 1487), and 28 U.S.C. § 1345. Defendant Intercon, a Florida corporation, was the registered owner of the Defendant in rem Douglas DCA aircraft registration number N45501 (aircraft), and Defendant Harvey was the President of Intercon.

On August 23, 1978, the Federal Aviation Administration (FAA) issued an emergency order of suspension which suspended the airworthiness certificate of the aircraft.

In September, 1978, a separate proceeding was instituted by the United States against Harvey and others for the assessment of civil penalties and injunctive relief arising out of an August 27, 1978 emergency order of suspension issued by the FAA. In February 1979, Harvey and the United States entered into a consent agreement for the entry of a permanent injunction enjoining Harvey, among other things, from "operating [the aircraft] contrary to and in violation of the August 23, 1978 order of suspension of (the) aircraft's airworthiness certificate." The aircraft was then in Santo Domingo. In early March 1979, the FAA issued a ferry permit allowing the aircraft to return to Miami.

Upon arriving in Miami, Harvey took the aircraft to Sekman Aviation Corporation (Sekman) on or about March 10, 1979, and placed a work order with the company for various items to be repaired. Thereafter, in March 1979, FAA inspectors, upon Harvey's request, inspected the aircraft at Sekman. Upon completion of their inspection, an aircraft condition notice was issued on March 30, 1979 by the FAA inspectors listing numerous deficiencies in the condition of the aircraft, the effect of which was to continue the emergency order of suspension of the aircraft dated August 23, 1978.

On or about April 5, 1979, the aircraft made a flight to Love Field, Dallas, Texas. At that time, the emergency order of suspension had not been lifted or terminated. After being airborne for a short period of time the flight was aborted and returned to the origin of the flight from Miami International Airport.

After the April 5, 1979 flight, the FAA performed an inspection and issued another aircraft condition notice. On April 7, 1979 the FAA again inspected the aircraft and issued a third aircraft condition notice.

On April 7, 1979, the FAA entered an emergency order of revocation revoking the mechanics certificate number 1988768 issued to Harvey and ordered Harvey to surrender immediately the certificate to the FAA. Harvey surrendered the certificate on May 14, 1979. On April 24, 1979, the

FAA ordered Intercon to present the maintenance records of the aircraft which as of the date of the trial had not been produced.

The complaint also alleges civil penalties against Defendant Jerry Harvey because on or about July 3, 1977, Harvey leased and operated a DC–6 aircraft cargo plane on a flight to Venezuela with a load of meat when he had neither an air carrier nor commercial operator's operating certificate or appropriate operations specifications contrary to 49 U.S.C. § 1430(a)(4)(5) and 14 C.F.R. § 121(e) and § 121(f), and in violation of numerous regulations of the FAA. The numerous regulations are as follows:

14 C.F.R. § 121.55
14 C.F.R. § 121.59
14 C.F.R. § 121.113
14 C.F.R. § 121.59
14 C.F.R. § 121.75
14 C.F.R. § 121.123
14 C.F.R. § 121.125
14 C.F.R. § 121.135
14 C.F.R. § 121.367
14 C.F.R. § 121.369
14 C.F.R. § 121.371
14 C.F.R. § 121.375
14 C.F.R. § 121.380
14 C.F.R. § 121.401
14 C.F.R. § 121.383

To the complaint the Defendant raised several "affirmative defenses" against the United States, such as estoppel, bad faith, selective enforcement of governmental regulations, improper investigations, violation of its agreement with the Defendants Harvey and Intercon, and lack of proof that the Defendants Harvey and Intercon were owners or operators of the Defendant aircraft after March 30, 1979.

## CONCLUSIONS OF LAW

The broad powers of the FAA to promote safety by regulation of civil aircraft in air commerce is set forth in detail in *F.A.A. v. Landy*, 705 F.2d 624 (2d Cir.1983). Suffice it to say as was so aptly stated by Judge van Graafeiland in his concurrence and dissent to the majority opinion, "air safety

ranks somewhere in pecking order between motherhood and the American flag...." *Id.* at 637. The primary part of the odyssey between Harvey, Intercon and the FAA began in this case on August 23, 1978, when the FAA issued an emergency order of suspension suspending the airworthiness certificate of the Defendant aircraft. 49 U.S.C. § 1430(a)(1) provides that it shall be unlawful:

> For any person to operate in air commerce any civil aircraft for which there is not currently in effect an airworthiness certificate or in violation of the terms of any such certificate.

*See also* Federal Aviation Regulations, 14 C.F.R. § 91.27(a)(1). On August 23, 1978, the FAA listed in its emergency order of suspension some thirteen discrepancies and recited that the aircraft's airworthiness certificate would remain suspended until it was demonstrated that the discrepancies were repaired and the airworthiness requirements of the aircraft were met. Thereafter a series of events occurred which gave rise to Harvey and Intercon being charged with multiple penalties for operating the aircraft without an airworthiness certificate and in violation of various aircraft condition notices.

Upon a request for an FAA inspection after the discrepancies had been purportedly repaired, the FAA inspected the aircraft and issued the aircraft condition notice of March 30, 1979 listing some forty-three (43) deficiencies still existing.

At the time of the April 5, 1979 flight to Dallas, Texas, the emergency order of suspension had not been revoked or lifted by the FAA.

Harvey's legal "defenses" to the claimed violations of the FAA regulations can be categorized as follows:

(A) As to the 1977 flight to Venezuela, Harvey had entered into a lease with Lanica, the national airline of Venezuela for the lease of one of their aircraft. Immediately after leasing the aircraft to one Jorge Anzola, Anzola arranged for the cargo flight of July 3, 1977 to take place and Harvey merely acted as a broker, and did not operate the aircraft.

(B) As to the flight of April 5, 1979, Harvey contends on March 30, 1979 (the same day the [first] condition notice was issued) he had entered into a contract for sale for the transfer of this aircraft to Global Restaurant Supplies and had transferred all of his interest to the new purchaser, and had no authorization, interest or control over the aircraft, and accordingly, did not "operate" the aircraft in violation of the emergency order of suspension or "operate" an aircraft in an unairworthy condition.

(C) Harvey is not liable for civil penalties pursuant to 14 C.F.R. § 121(f) for failing to surrender his mechanics certificate for 33 days on May 15, 1979 after it had been revoked by an emergency order of revocation signed April 9, 1979 because the emergency order had been stayed as Harvey had appealed the order on April 30, 1979 and as he had 20 days in which to appeal he was not in violation for failing to surrender his mechanics certificate.

In considering the contentions of the parties as to the alleged violations, and the defenses thereto, the Court will consider them historically.

### I. *1977 Flight to Venezuela by Harvey Without an Air Carrier Operating Certificate*

Under the applicable regulations, 14 C.F.R. §§ 121.3(e)–(f) and 121.4, one may not operate an aircraft without complying with certain air safety requirements.

Harvey's position is that he had leased an aircraft (AN–BFN) and thereafter subleased it to Jorge Anzola for a meat flight from Miami to Venezuela and that under the terms of the lease agreement, the AN–BFN aircraft was a foreign registered aircraft operating under foreign air carrier regulations. Accordingly, Harvey did not have "operational control over the aircraft" so as to be subject to FAA regulations as Lanica maintained control of the aircraft. The United States introduced a statement

signed by Harvey that he had entered into a contract to receive $300.00 per flight for transporting cargo and that Harvey remained responsible for the maintenance and crew.

The definition of a "foreign air carrier" as set forth in 14 C.F.R. § 1.1 is as follows:

Any person other than a citizen of the United States who undertakes directly by lease or other arrangement to engage in air transportation. . . .

■ The Court finds the aircraft was operated by Harvey as a U.S. citizen and was not a foreign air carrier. Harvey is therefore liable for a civil penalty in the amount of $1,000.00 because on July 3, 1977 he operated aircraft AN–BFN in violation of 14 C.F.R. §§ 121.3(e)–(f).

■ The Court also finds that Harvey is liable for civil penalties in the amount of $14,000.00 for operating aircraft AN–BFN on July 3, 1977 for the purpose of carrying cargo in air commerce or transporter for hire without having complied with the appropriate federal regulations in that at the time of the flight:

(a) Harvey had failed to submit to the Administrator of the Federal Aviation Administration the commercial operator financial statements required semi-annually and annually contrary to and in violation of the Federal Aviation Regulations, 14 CFR § 121.55.

(b) Harvey had not shown the Administrator that he had enough qualified management personnel in the proper position to provide the highest degree of safety as required by the Federal Aviation Regulations, 14 C.F.R. § 121.59.

(c) Harvey had not obtained area and route approval for his operations contrary to and in violation of the Federal Aviation Regulations, 14 C.F.R. § 121.113.

(d) Harvey had not maintained a complete and separate set of his operations specifications contrary to and in violation of Federal Aviation Regulations, 14 C.F.R. § 121.75.

(e) Harvey had not shown that competent personnel and adequate facilities and equipment (including spare parts, supplies and materials) were available for the proper servicing, maintenance, and preventative maintenance of this aircraft and auxiliary equipment contrary to and in violation of the Federal Aviation Regulations, 14 C.F.R. § 121.123.

(f) Harvey had not shown that he maintained a flight following system, and the equipment and personnel to operate it, and Harvey did not have an approved system established in accordance with Subpart U, contrary to and in violation of the Federal Aviation Regulations, 14 C.F.R. § 121.125.

(g) Harvey did not keep a current commercial operator company manual for the use of and guidance of flight ground operation and management personnel in conducting its operation containing the information set forth in the Federal Aviation Regulations, 14 C.F.R. § 121.135, contrary to and in violation of 14 C.F.R. § 121.133.

(h) Harvey had not established and maintained an inspection program covering other maintenance, preventative maintenance and alterations that ensure that work is accomplished in compliance with the manual, that competent personnel, facilities and equipment are used, and that each aircraft released to service is airworthy and had been properly maintained for operation under the Federal Aviation Regulations, 14 C.F.R. § 121.367; and had failed adequately to identify those responsible for maintenance in the manual, contrary to and in violation of the Federal Aviation Regulations, 14 C.F.R. § 121.369.

(i) Harvey had failed to maintain a current list of properly trained, qualified and authorized inspection personnel, contrary to and in violation of the Federal Aviation Regulations, 14 C.F.R. § 121.371; and failed to establish and maintain a maintenance training program, contrary to and in violation of the Federal Aviation Regulations, 14 C.F.R. § 121.375.

(j) Harvey had failed to establish, and maintain a maintenance recording system contrary to and in violation of the Federal Aviation Regulations, 14 C.F.R. § 121.380.

(k) Harvey had failed to establish, obtain from the Administrator of the Federal Aviation Administration initial and final approval of, and provide for, a training program which meets the requirements of the Federal Aviation Regulations, 14 C.F.R. §§ 121.400–427, 121 app. E, F for each crew member, dispatcher, flight inspector and check airman, contrary to and in violation of the Federal Aviation Regulations, 14 C.F.R. § 121.401.

(*l*) Harvey utilized persons who served as airmen on the above-described operation when they were not qualified for the operation for which they were used by virtue of their failure to complete an approved training program as required by the Federal Aviation Regulations, 14 C.F.R. § 121.433, contrary to and in violation of the Federal Aviation Regulations, 14 C.F.R. § 121.-383(a)(3).

## II. *Violation of the 1979 Emergency Order of Revocation to Surrender Harvey's Mechanic's Certificate*

It is undisputed that on April 7, 1979 the FAA under an emergency order of revocation revoked Harvey's mechanic's certificate and ordered Harvey to "immediately surrender his certificate" to the regional counsel for the FAA.

The order of revocation advised Harvey of his right to appeal as follows:

> You may appeal from this Order by filing a Notice of Appeal with the Office of Administrative Law Judges, National Transportation Safety Board, Washington, D.C. 20594, within twenty (20) days from the time of service of this Order. Part 821 of the Board's Rules of Practice (49 CFR 821) applies to such an appeal. A letter is considered served as of the date of the postmark. *Such an appeal stays the effectiveness of this Order. If you appeal, please send a copy to us.* (Emphasis added.)

It is also undisputed that on April 17, 1979 an administrative appeal was duly and timely filed by Harvey, and received by the National Transportation Safety Board (NTSB). In preparation for a May 15, 1979

hearing before the NTSB Harvey admitted he had been convicted of a felony which is grounds for an automatic suspension of his certificate. Thereafter, by an agreement with Harvey's attorney and the FAA, Harvey's certificate was voluntarily surrendered on May 14, 1979 and the FAA dismissed the pending proceedings unrelated to the felony conviction. Thereafter, the FAA proceeded with a new notice of revocation of certificate action which action was ultimately resolved between the parties.

■ The FAA seeks to impose some $33,000 in penalties for Harvey's failure to surrender his mechanics certificate for thirty-three days after it had been "immediately" revoked by the Emergency Order of Revocation. (A civil penalty at the rate of $1,000.00 a day in violation of 14 C.F.R. § 61.19(f).) The Court finds that although under 49 U.S.C. §§ 1429 and 1485 the Secretary of Transportation has the authority to require the immediate surrender of an aircraft mechanic's certificate "if he so orders", and further only if he "advises the National Transportation Safety Board that an emergency exists and safety in air commerce or air transportation requires the immediate effectiveness of his order...." 49 U.S.C. 1429(a). There was no evidence that the Secretary did "so order". The emergency order clearly provides that a timely appeal "stays effectiveness of the order." Further, there was no evidence presented that the Secretary notified the NTSB as required by 49 U.S.C. 1429(a).

■ Accordingly, the Court finds that Harvey filed a timely appeal and should not be fined for failing to surrender his mechanic's certificate pursuant to the FAA's request of April 24, 1979.

## III. *Failure to Deliver Aircraft Maintenance Records.*

On April 24, 1979, the FAA requested Intercon and Harvey that pursuant to 14 C.F.R. § 91.173(c) the maintenance records of the aircraft be presented. Neither Intercon nor Harvey surrendered the maintenance records on demand. As a "defense"

Harvey testified he believed the aircraft's records were in the custody of an attorney, Matthew Gold, who represented both him and Intercon, and he did not know their whereabouts since April 1979. On the eve of trial Matthew Gold's deposition was taken and he stated that the records were last seen when they were delivered to "new purchasers" of the aircraft on or about April 5, 1979.

The Court finds Harvey's argument to be spurious. There was no evidence presented that Matthew Gold was served with any subpoena or official notice to produce the records until just prior to trial, although this case had been pending since 1979, nor that any attempt was made to secure documentation from the "new owners" about the records. In fact, other than Harvey's testimony there is no evidence to support any "delivery" of the records to the "new owners."

■ Accordingly, the Court finds Intercon and Harvey are both liable for civil penalties in the amount of $1,950,000, computed at the rate of $1,000 per day from the date of demand of the maintenance records, April 24, 1979, to the date of the sale of the aircraft, July 30, 1984, because they failed to surrender maintenance records as required by the Federal Aviation Regulations, 14 C.F.R. § 91.173(c).

## IV. *The April 5, 1979 Flight in Violation of the March 30, 1979 Emergency Order of Suspension*

The United States contends that Intercon and Harvey are liable for civil penalties in that they operated the aircraft on April 5, 1979 contrary to the March 30, 1979 emergency order of suspension and in violation of 49 U.S.C. § 1430(a)(2) and 14 C.F.R. §§ 91.27(a)(1), 91.29(a), 91.169(e)–(f). In particular, the United States seeks penalties because Intercon and Harvey used, caused to be used, or authorized the use of the aircraft when the aircraft:

(a) did not have an appropriate and current airworthiness certificate;

(b) was not in an airworthiness condition;

(c) was in violation of the Emergency Order of Suspension; and

(d) did not have a large inspection program on file by the registered operator.

Harvey testified that at the time of the April 5, 1979 flight, the aircraft airworthiness certificate was no longer suspended; the aircraft was in an airworthiness condition; the flight was not in violation of the Emergency Order; and an inspection program was on file.

Finally, Harvey contends that even in the event there was a technical violation of a regulation, that the United States is estopped from holding Harvey and Intercon liable due to the United States's misrepresentations to Harvey and Intercon and Harvey's and Intercon's reliance thereon; the United States's "bad faith" and selective enforcement of its regulations and the United States's violations of its agreements with Intercon and Harvey.

■ In short, Harvey and Intercon by their estoppel argument now seek to go behind the March 30, 1979 Emergency Order of Suspension. The correct remedy if the Order of Suspension was invalid was for Harvey to appeal the order to the NTSB under 49 C.F.R. § 821.

Harvey also attempts to argue that he personally should not be held liable for these penalties because he did not operate the aircraft. The defendant, however, overlooks the broad definition of the term "operate" as found in 14 C.F.R. § 1.1:

"Operate," with respect to aircraft, means use, cause to use or authorize to use aircraft, for the purpose ... of air navigation including the piloting of aircraft, with or without the right of legal control (as owner, lessee, or otherwise).

The evidence at trial established that there were three individuals on board the subject aircraft on April 5, 1979, and that a crew of three was required to operate the aircraft. Harvey was seen on board the aircraft. Harvey testified on March 30, 1979 that the aircraft was sold and title transferred to a third party (Global Restaurant Supplies)

and later, after April 5, 1979, Harvey and Intercon took back the title to the aircraft.

■ The Court finds that Harvey, as president of Intercon Leasing and as the on-site representative of the new owner, as well as a crewmember, operated this aircraft on April 5, 1979 within the meaning of that term as defined by 14 C.F.R. § 1.1.

■ By way of a broad based defense Intercon and Harvey rely on "estoppel" to prevent the imposition of any penalties by the United States. In substance Harvey and Intercon claim that the government, by its conduct, is selectively enforcing penalties against them and lulling them into believing that the emergency order of suspension was waived in March 1984. Harvey's and Intercon's argument in support of their estoppel defenses is without merit. As was aptly stated in *Emery Mining Corp. v. Secretary of Labor*, 744 F.2d 1411 (10th Cir.1984):

> "courts invoke the doctrine of estoppel against the government with great reluctance." *United States v. Browning*, 630 F.2d 694, 702 (10th Cir.1980), *cert. denied*, 451 U.S. 988, 101 S.Ct. 2324, 68 L.Ed.2d 846 (1981); *see Heckler v. Community Health Services*, [467] U.S. [51], 104 S.Ct. 2218, 2224, 81 L.Ed.2d 42 (1984) (government may not be estopped on same terms as any other litigant). Application of the doctrine is justified only where "it does not interfere with underlying government policies or unduly undermine the correct enforcement of a particular law or regulation." *Browning*, 630 F.2d at 702. Equitable estoppel "may not be used to contradict a clear Congressional mandate," *Worley v. Harris*, 666 F.2d 417, 422 (9th Cir.1982), as undoubtedly would be the case were we to apply it here. *See Enfield [v. Kleppe]* 566 F.2d [1139 (10th Cir.1977)] at 1142; *cf. Molton, Allen & Williams, Inc. v. Harris*, 613 F.2d 1176, 1178–79 (D.C.Cir.1980).

*Id.* at 1416. Furthermore, in the recent case of *RTA Corp. v. Consolidated Rail Corp.*, 594 F.Supp. 205 (S.D.N.Y.1984), the court stated the following:

> Throughout our analysis, we must be mindful that, "[e]stoppel, within the context of the mandatory, statutory and regulatory scheme, should not be lightly found."

*Id.* at 210 (citing *Bobst Division of Bobst Champlain Inc. v. IML Freight, Inc.*, 566 F.Supp. 665 (S.D.N.Y.1983); *see also United States v. Goodman*, 572 F.Supp. 1284 (Ct.Int'l Trade 1983).

## CONCLUSION

For the reasons herein set forth in the above findings of fact and conclusions of law it is

ORDERED AND ADJUDGED as follows:

1. A summons was issued as to Defendant ANGEL DELA CUESTA–GUZMAN on June 14, 1979 which summons was returned unexecuted on June 15, 1979. Accordingly, the Defendant ANGEL DELA CUESTA–GUZMAN is hereby DISMISSED pursuant to Local Rule 13.

2. A summons was never issued for the Defendant JOHN DOE, Second in Command. Accordingly, the Defendant JOHN DOE is hereby DISMISSED pursuant to Local Rule 13.

3. The UNITED STATES OF AMERICA shall have and recover from JERRY L. HARVEY the amount of One Million Nine Hundred Eighty-One Thousand Dollars and no Cents ($1,981,000.00) for which let execution issue.

4. The UNITED STATES OF AMERICA shall have and recover from INTERCON LEASING, INC. the amount of One Million Nine Hundred Sixty-Six Thousand Dollars ($1,966,000.00) for which execution shall issue.