**Jeffrey P. DEVIN and Irene K. Devin, Plaintiff(s),**

**v.**

**UNITED STATES of America, Defendant(s).**

No. 05–CV–166–D.

United States District Court, D. Wyoming.

Feb. 21, 2006.

Janet L. Tyler, Law Offices of Janet L. Tyler, Laramie, WY, for Plaintiffs.

Anton L. Janik, Jr., Department of Justice, Washington, DC, Nicholas Vassallo, U.S. Attorney's Office, Cheyenne, WY, for Defendant.

### *ORDER GRANTING MOTION FOR SUMMARY JUDGMENT*

DOWNES, District Judge.

This matter comes before the Court on the Defendant's Motion to Dismiss, which was converted by the Court to a motion for summary judgment. The Court, having carefully considered the briefs and materials submitted in support of the motions and Plaintiffs' oppositions thereto, having heard oral argument of counsel and being otherwise fully advised, FINDS and ORDERS as follows:

#### BACKGROUND

Plaintiffs invested in an abusive tax shelter operated by a partnership named the Crowne Oil Technology Partners during the years 1981, 1982, and 1983. This case involves income tax liabilities that resulted from the Devins' investment in the Crowne Oil Partnership. The Internal Revenue Service (IRS) audited the partners participating in the Crowne Oil tax shelter during tax years 1981 and 1982, leading to litigation in the United States Tax Court. Plaintiffs' 1981 and 1982 tax returns were audited, and they challenged this deficiency in the Tax Court. After their case for tax years 1981 and 1982 was docketed, the Devins and a number of other partners were offered a settlement for the years in issue, allowing them to settle their cases by limiting their deductions or losses in those years to their out-of-pocket cash contributions to the Crowne Oil Partnership. The Devins ultimately accepted the offer to settle the 1981 and 1982 tax shelter liabilities,[1] limiting their losses to their settlement.

---

1. The Plaintiffs represent that they were the only individual partners to accept the offer of

out-of-pocket cash investments made in those tax years.

In this action, Plaintiffs allege that the IRS agreed to settle their liability for the 1983 tax year by limiting their Crowne Oil loss for that year to their out-of-pocket cash contributions, in accordance with the same terms and conditions of the settlement for years 1981 and 1982. More specifically, Plaintiffs allege that it was the "Office of Special Counsel" which instructed their attorney to amend their 1983 return precisely as submitted. In explaining the changes to their 1983 return (on the return itself), Plaintiffs reference the 1981/1982 audit and proposed adjustments for those years. Plaintiffs further state, "Taxpayer's [sic] choose, under advise [sic] from legal counsel, to amend their 1983 tax return to limit their deduction for 1983 to their out of pocket expenses." (Plaintiffs' Supp. Response, Ex. A.) Plaintiffs assert that, upon presenting the amended 1983 return along with payment to the IRS for all three years' tax liabilities, the "Office of Special Counsel" advised an IRS representative that a settlement agreement had been reached with the Plaintiffs regarding all three years. After receiving this verbal verification, the same IRS representative accepted the Plaintiffs' amended return for 1983 and corresponding payment, along with payments for 1981 and 1982. (Amended Affidavit of Robert J. Varra at ¶ 8.) An accompanying letter from Plaintiffs' legal counsel, dated August 21, 1989, requests that "Martinsburg" be notified of the payments "so they can be properly credited before the Special Litigation counsel asks for transcripts." (Exhibit to Affidavit of Robert J. Varra.) [2] This alleged settlement agreement as to Plaintiffs' 1983 tax liabilities was not reduced to writing.

The Crowne Oil partnership's 1983 tax return was audited pursuant to the procedures set forth in the Tax Equity and Fiscal Responsibility Act of 1982 (TEFRA), 26 U.S.C. § 6221 *et seq.* Under TEFRA, the liability for partnership items could now be determined at the partnership level. The audit resulted in the issuance of a Final Partnership Administrative Adjustment (FPAA) on February 28, 1994, which listed the new adjustments to be made to the partnership's tax return for the audited year. The Plaintiffs admit that they received this FPAA, and assert that they responded to it by sending a letter to the IRS, referencing the amended 1983 return and alleged settlement agreed to by "Special Counsel." The Crowne Oil FPAA for tax year 1983 was petitioned to the Tax Court by the Crowne Oil tax matters partner.

While that case was docketed, the Commissioner's counsel engaged in settlement negotiations with the TEFRA partnership investors. The terms of these negotiations differed substantially from those terms offered during the earlier litigation involving the 1981 and 1982 tax years. Plaintiffs admit that they received notice of this settlement option, but declined to accept the "1994 settlement offer," assuming such acceptance would prejudice their opportunity "to explain their unique standing as the only limited partners who accepted the government's settlement in 1989." (Complaint at 7.)

On June 13, 2002, the Tax Court dismissed the proceedings for failure of the petitioners to properly prosecute their case and entered its decision. (Janik Declaration, Ex. C.) The Tax Court's Order and Order of Dismissal and Decision determined, at the partnership level, that the substantial interest and license fee ex-

---

**2.** The Decision of the Tax Court with respect to Plaintiffs' tax liabilities for 1981 and 1982, reflecting the parties' settlement stipulations, was entered on April 30, 1990.

penses claimed on Crowne Oil's 1983 partnership return were disallowed, resulting in $528,803.00 in ordinary income versus the $6,530,052.00 loss claimed on the return. This outcome was conclusive and binding upon the partnership, but not against any partners who had settled that year under the above settlement negotiations. 26 U.S.C. § 6226(h).

While a TEFRA proceeding is in litigation, the time limit in which to assess any tax or penalty resulting from a partnership item is stayed until the decision of the Tax Court has become final, plus an additional year. 26 U.S.C. § 6229(d). Section 7481(a)(1) states that a Tax Court decision becomes final upon the expiration of the time allowed for filing an appeal if no such appeal is filed. Section 7483 provides that the period in which to file an appeal from a Tax Court decision is within 90 days after the decision is entered. The Plaintiffs did not file an appeal of the Tax Court's June 13, 2002, decision.

On February 3, 2003, the IRS mailed Plaintiffs a letter notifying them of the adjustments to their tax year 1983 return resulting from the Tax Court's decision with respect to Crowne Oil's 1983 tax year. On July 21, 2003, the IRS assessed the Plaintiffs' additional tax in the amount of $5,988.00 as well as restricted interest in the amount of $35,501.55 for tax year 1983. (Janik Declaration Ex. B.) The Plaintiffs paid the $5,988.00 tax assessment on December 24, 2003. *Id.* Plaintiffs now seek a refund of the alleged overpayment of liabilities for tax year 1983.

## STANDARD OF REVIEW

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."

FED.R.CIV.P. 56(c). "By its very terms, [the Rule 56(c) ] standard provides that the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there is no *genuine* issue of *material* fact." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 247–48, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986) (emphasis in original).

■ The trial court decides which facts are material as a matter of law. "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment .... [W]hile the materiality determination rests on the substantive law, it is the substantive law's identification of which facts are critical and which facts are irrelevant that governs." *Id.* at 248, 106 S.Ct. 2505; *see also Carey v. United States Postal Serv.,* 812 F.2d 621, 623 (10th Cir.1987). The relevant inquiry is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Id.* at 623. In considering a party's motion for summary judgment, the court must examine all evidence in the light most favorable to the nonmoving party. *Barber v. General Elec. Co.,* 648 F.2d 1272, 1276 n. 1 (10th Cir.1981). However, "[w]hen a motion for summary judgment is made and supported as provided in [Rule 56], an adverse party may not rest upon the mere allegations or denials of the adverse party's pleading, but the adverse party's response, by affidavits or otherwise provided in [Rule 56], must set forth specific facts showing that there is a genuine issue for trial." FED. R. CIV. P. 56(e).

## DISCUSSION

The government argues that there was no settlement or compromise of Plaintiffs'

1983 tax liability since any such agreement would have to be in writing. Plaintiffs contend that they relied upon the verbal commitment of "Special Counsel" that they could amend their 1983 tax return in accordance with the same terms and conditions as in the settlement for the 1981 and 1982 tax years. Even assuming the truth of such an assertion, Plaintiffs have cited no case law or statutory authority supporting the proposition that such reliance should be binding upon the IRS.

■ The IRS's authority to enter into settlement agreements and tax compromises is set forth in 26 U.S.C. §§ 7121 and 7122. Section 7121 provides, "The Secretary is authorized to enter into an agreement in writing with any person relating to the liability of such person (or of the person or estate for whom he acts) in respect of any internal revenue tax for any taxable period." The authority of the Secretary to enter into tax compromise agreements is found in § 7122. The associated Treasury regulations require that an offer to compromise be submitted in writing and signed by the taxpayer under penalty of perjury, and that the IRS's acceptance of the compromise also be in writing. 26 C.F.R. § 307.7122–1(d)(1), (e). *See Boulez v. Commissioner*, 810 F.2d 209 (D.C.Cir. 1987) (oral agreement insufficient because regulations specifying that all offers to compromise disputed tax liabilities be submitted and accepted in writing defined form that compromise agreements must take, regulation was mandatory and had force of law); *Delohery v. IRS*, 843 F.Supp. 666, 669 (D.Colo.1994) (Treasury regulations requiring that offer and acceptance of a compromise be in writing are mandatory and strictly construed, and are the exclusive means in which to compromise tax liabilities).

In a case factually similar to the one now before this Court, the United States District Court for the Southern District of Florida granted the United States' motion for summary judgment where the taxpayers alleged that between 1986 and 1987 they had reached an out-of-pocket cash contribution settlement with the IRS for taxable years 1983 and 1984 with regard to their investment in a tax shelter partnership. *Segel v. United States*, 97–1 U.S.T.C. ¶ 50,404, 1997 WL 369756 (S.D.Fla.1997). There, as in the instant case, the taxpayers paid the assessments and then sought refunds, contending that the assessments were erroneous and illegal in light of the settlement they had reached. Concluding that the taxpayers had failed to present evidence sufficient to support their claim that a valid settlement had been reached, the court agreed with the government that "the settlement of disputed tax liabilities is governed exclusively by sections 7121 and 7122 of the Internal Revenue Code." *Id.* at *6. The court was also unpersuaded by the plaintiffs' contention that the filing of amended returns for the tax years in issue, containing changes based on the alleged settlement terms, was evidence that a settlement agreement existed. *Id; see also Shumaker v. Commissioner of Internal Revenue*, 648 F.2d 1198, 1199 (9th Cir. 1981) ("Neither the informal acceptance of [taxpayer's] amended returns nor the adjustments to his tax crediting him with the amount in controversy constitute a binding agreement under the tax laws.").

■ Plaintiffs further suggest that the government should be estopped from enforcing the requirements of section 7122. The Tenth Circuit recognizes the doctrine of estoppel against the government with great reluctance. *Emery Mining Corp. v. Secretary of Labor*, 744 F.2d 1411, 1416 (10th Cir.1984). Plaintiffs have made no attempt to show that application of estoppel against the government in this instance would not interfere with underlying gov-

ernment policies or unduly undermine the correct enforcement of a particular law or regulation. *Id.* Moreover, Plaintiffs have not shown that reliance on the alleged verbal agreement was reasonable, that they did not know that the adversary's conduct was misleading, or that the government engaged in affirmative misconduct. *Id; see also Delohery,* 843 F.Supp. at 669–70. Accordingly, Plaintiffs are not entitled to the application of equitable estoppel.

Finally, Plaintiffs contend that the government's additional assessment for tax year 1983 liabilities was untimely. However, Plaintiffs do not identify the statutory provision(s) alleged to have been violated by the government, nor do they provide any cogent argument or evidence supporting their contention. The Court finds that Plaintiffs' conclusory allegations fail to state a claim upon which relief could be granted.

CONCLUSION

Because Plaintiffs have failed to establish the existence of a valid settlement agreement with respect to the 1983 tax year, have failed to establish a basis for equitable estoppel to lie against the government in this case, and have failed to state a claim as to the timeliness of the additional tax assessment, Defendant is entitled to summary judgment. THEREFORE, it is hereby

**ORDERED** that the United States' Motion for Summary Judgment is **GRANTED** and Plaintiffs' Complaint is **DISMISSED** with prejudice.